At Mr. Rivera's trial for strangling his girlfriend, by far the most prejudicial evidence was Jennifer Davidson's testimony that Mr. Rivera had repeatedly strangled her to the point that she saw stars and thought she might die. At Mr. Rivera's trial, counsel recognized how damaging that testimony would be and her strategy was to exclude it. She objected before trial and then later she asked the judge to reconsider his admissibility ruling. But during trial, after the basis for admitting Davidson's testimony had evaporated and there were then grounds to exclude the testimony, counsel failed to renew her objection. The California Court of Appeal found that this was not IAC, but that decision was objectively unreasonable. I'd like to start by addressing the 2254 D2 argument and going through how the Court of Appeal's decision was an unreasonable determination of the facts in light of the state court evidence. So the California Court of Appeal found that there was a conceivable reason for trial counsel's actions. That she made a tactical decision not to object to avoid the prosecutor admitting the arson conviction. But that ignores several facts in the record that support Mr. Rivera's IAC claim and that show counsel's perspective at the time of trial, which is what we're supposed to look at under the 2254 D2 argument, because I don't see that the court made any finding of historical facts that's disputed. Basically, it was, the court was following the string of cases saying that you need to indulge in presumption in favor of counsel. So is there a historical fact that the district court found that was wrong? I think the historical fact is that this was tactical and that she was trying to avoid  Well, that's the essence of, that we indulge in presumption that the decision was tactical. But what was the historical fact that the district court found that was disputed? Well, let me take one step back just to sort of explain why I think this is a historical fact. So performance is a mixed question of fact and law. The ultimate determination that trial counsel's performance was reasonable is the legal determination. And then there are facts that can be the basis of the court's decision. And so when 2254 D2 says, did the decision, was the basis of it the result of unreasonable determination of facts? Yes, because, and now let me answer your own question, the state court found the historical fact that this arson conviction was likely to be, A, proffered by the state and B, admitted by the trial court. And both of those facts are just contradicted by the record. So the judge had told the parties at the Illuminate hearing, no convictions were coming in, not even any arrests were coming in. So the question is whether it is likely it would come in as opposed to it didn't come in, or it didn't come in, which seems like a question of historical fact. The district court's determination was one of probability, not one of fact finding. Can you repeat that? I'm not sure. It sounds like the district court's determination was, is it probable or not probable? That's not a fact. That's a question of probabilities. Well, I think the finding was, again, to go back, you know, I think the finding is this was tactical. Because there's nothing in the record about why counsel did this, unfortunately. And so the state court went back and determined whether there was any conceivable reason. And the state court said, yes, there was a conceivable reason, this was tactical. But that decision that this was tactical and that counsel had made a decision, a strategic decision to keep out the arson conviction, just is completely, that's based on pure speculation. There's nothing in the record to support that, and the record contradicts it. So again, not only had the judge said no arson convictions coming in, the state had never even tried to proffer the arson conviction. When the judge was talking about how the state had to get Golick there to testify, the state never offered the arson conviction as an alternative piece of evidence. The judge never suggested it. The judge was leaning very hard on the state to get Golick there to testify. So if we agree with you that this was unreasonable by the state court, whether it's law or fact, you get to de novo review. But I guess what I'm struggling with is how you can win on de novo review. Because it seems like there was so much evidence against your client that I'm not sure this testimony really tipped the balance in terms of the prejudice prong, Your Honor. So prejudice, we have to show that the motion to suppress or the motion to exclude would have been meritorious, and then that there's a reasonable probability that the outcome would have been different. And it's the outcome being different that makes that good. And so this was a circumstantial case. Davidson was the one who really had the damaging evidence against Mr. Rivera. I think that there was significant evidence of prior altercations between Mr. Rivera and Ms. Hickson, including people that intervened in disputes that they had that she had been injured by him previously. The government points to all of this evidence on the record. How does that play into your analysis? Well, I think what's important in the analysis is the similarity between Davidson's testimony about all of these prior strangulations and then the fact that Ms. Hickson was strangled. And so there was testimony by the people who lived on the property that the couple frequently argued. There was an insinuation that he had been violent towards her because they heard an argument and later saw her with a broken nose. But no one testified about how that happened. No one had actually seen them, seen Mr. Rivera be violent towards Ms. Hickson. And so in Hickson, I think my notes say that Hickson told some of them that Rivera had beaten her, that Rivera had tried to rape her and put a hand over her mouth and a knife to her throat, which was the thing that immediately happened before we even found Hickson's body. It wasn't immediately before. It was the day before. The morning that her body was found, another couple that lived on the property had had coffee with them this morning, chatted, said nothing was amiss. They both seemed pretty normal. Ms. Hickson was maybe a little bit more quiet, but no bruises, no nothing. But I think the state is overplaying on appeal how close this case was. It really wasn't. The jury was out for a day and a half. The trial only took two and a half days for evidence to come in. They asked several questions during their deliberations. They asked for a readback of Tamara Wheaton's testimony, the woman who found Ms. Hickson, readback of the medical examiners. And I think really important here in terms of the strangulation and the similarity of the two events is the prosecution argued that the jury could use Jennifer Davidson's testimony to find that this rose to first-degree murder. And we know that the jury was struggling with determining second- or first-degree murder because they asked a question of the judge, what does premeditated deliberate willful mean? I'm not sure how this other testimony affects that, though. I mean, the length of how long it takes to strangle someone, I thought, was how you're going to get from second degree to first degree. And that's, I'm not sure how that's affected by the testimony that you're contesting. Well, I think the fact that he had perhaps done it before, perhaps knew how long you could strangle someone and they pass out but not die, I think that was relevant. I think that's what the prosecution was arguing. If you go back to 4 ER 646, that's around where the prosecution is saying, how are you going to determine whether this was willful, deliberate, premeditated? You get to consider the prior domestic violence. That was one of the main pieces of evidence they had. It wasn't just a propensity that he strangled Jennifer Davidson before and he did this with Ms. Hickson. It's that this particular manner of crime, of abuse that Jennifer Davidson testified to is the exact thing that we're alleging happened here. And he essentially knew what he was doing, knew how long it would take because that was the argument, was it, you know, a minute or two. He knew how long this would take and you get to consider Jennifer Davidson's testimony in determining whether this met the first-degree murder standard. I'll reserve and list your honors up. Thank you. I'm going to hand it over to my governor. Good morning. May it please the Court. Adrian Contreras, Deputy Attorney General, appearing for Appellee Brian Gates. Your Honor, turning first to the first topic of discussion today regarding the D2 determination from the Court. As the Court observed in its earlier remarks, this was not a historical fact that appeared in the state court's opinion. It was a state application of state rules of evidence. This is not a historical fact as far as who said what, when, where. It was just a statement of probability applying the stricter presumption that a defense attorney performs reasonably unless the defense proves otherwise. So are you saying that a probability can't be a fact? Not a historical fact. A probability under Strickland would probably be a, not to use a phrase, but a legal conclusion under Strickland. That would be the deficient performance part of Strickland. But so, I mean, here the judge had said the convictions don't come in and had also said if you can't get the testimony of the girlfriend in between, we're going to have a problem with the later, with the even earlier girlfriend, right? Or wife. So why don't those facts amount to facts that would contribute to a prediction about what the Court would have done with an objection? It seems like saying the judge, yes, there is a bit of a probability, but a prediction about whether the judge would have stuck to the old ruling seems like a fact about what the judge would have done, no? Well, it's applying the Strickland presumption of what a defense attorney would have, could have conceivably thought in the heat of trial once we had disparities between the district attorneys offer proof. As we pointed out in our brief, state law allows a trial court to revisit, either on its own if it wants to or on a request from a party, to revisit a ruling in limine. So the claim is that once Ms. Davidson, or Ms. Golick, testified the way she did, that was at variance from the prosecution's offer of proof, that would have allowed the trial court under state law, upon request, to revisit that ruling, and it would have had the discretion to do so. It definitely would have, and that's a question of law, right? Like, could this have been admissible seems like a question of law. But what this particular judge had said and would likely do, given what the judge had said, seems like arguably a question of fact. Well, I think the way that motions in limine played out before trial, everybody seemed to be under the assumption that this person was going to come from state prison, from Childs Hill in Madera County, and testify in conformance with the prosecution's offer of proof. The objections during motions in limine were under California Evidence Code Section 352, which is basically the state analog of balancing the probative value versus the unfair prejudice of particular evidence. At no point did anybody, let alone the defense, dispute the foundation that this event had happened, that the arson conviction would have qualified under California Evidence Code Section 1109 to be an uncharged act of domestic violence. It's really just the potential of the person. But the judge had said it's not domestic violence, I thought. Didn't the judge say, you can talk about the event, but not the conviction? Didn't the judge say something about how it's arson, not domestic violence? Yes, Your Honor, but that arose in a particular context. It was applying a different standard. So when the trial court made those remarks, it was addressing a motion that one of the parties had made about whether, if hypothetically, Mr. Rivera had testified, could he be impeached with a prior conviction of moral turpitude, which is a different standard than California Evidence Code Section 1109. That's a statute, as we pointed out, that incorporates a broadly phrased penal code statute. Basically, it would include an act that would put somebody in reasonable fear of imminent bodily injury. And there's several unpublished cases that we cited where trial courts have allowed this type of evidence in arson prosecutions because, assuming there's a nexus with that domestic violence angle, that could qualify under California Evidence Code Section 1109. So even if you're right, and this would have come in, the arson event is much less damaging than the Davidson testimony in general about the strangling. So even assuming you're right that the arson would have come in, how is it a reasonable strategy to say that we'll let the testimony come in instead of this one conviction? The testimony from Ms. Davidson. Well, the defense counsel, again, was trying to do damage control. And so what she was trying to do is focus her attention about the potential unfair prejudice of these uncharged acts. There were more acts regarding the ex-wife, Ms. Davidson. The one with Ms. Golich was more recent. But state law would have allowed the trial court in its discretion to admit this evidence for propensity evidence. The defense counsel tried to do that. She objected once during trial, or excuse me, once before trial, once in trial right before the witnesses testified. Ultimately, it was unsuccessful. And so once Ms. Golich testifies the way she does, now we're in the heat of trial. The defense attorney has to make a judgment call about, do I really want to press this argument a third time? And so under the EPA standard... But given that the judge had said, if Golich doesn't give you the link in the middle of the domestic violence, we're not going to have the older domestic violence, I don't understand how the strategy is, well, okay, let's let Davidson testify to all of this similar strangling. That doesn't make sense as a strategy, does it? It is because it's something that could be seen, again, applying the principles under Cohen v. Inholster, Yarbrough v. Gentry. Because this claim was raised on direct appeal, the record doesn't provide insight about why trial counsel did what they did. So this case law allows the court, the state court in particular, to consider conceivable tactical reasons why she did what she did. And that could be seen as a broader picture of risk management, particularly... But the risk management would be, I'd rather have the Davidson testimony than the arson conviction. That has to be the strategy that you're justifying, right? Well, with regard to... Because the trial court had already made the determination that some of the acts involving Ms. Davidson were going to come in. So the only reason there would have been to renew this objection would have been the variance regarding Ms. Gullich's testimony. And so that would have been the point at which defense counsel had to make a decision. How much do I want to rely on that variance as a basis to bring in the objection? And again, even though it is related to the uncharged acts, it would have been technically a different objection. Because all the objections up to that point would have been, is this evidence, whether it's Ms. Gullich or Ms. Davidson, going to be unfairly prejudicial relative to its appropriate value? Sorry to interrupt. Was there anything that the trial court said that perhaps Rivera's counsel could have latched onto to justify not objecting later? Yes, Your Honor. The trial court said part of its rationale about why it was going to let Ms. Davidson testify was because of Ms. Gullich's proffered testimony. The prosecution did what the trial court wanted it to do. They transported her from state prison, came to court. She testified. Obviously, she denied the substance of the domestic violence, but she did testify. But that doesn't really make sense, does it? I mean, the reason that the judge said you needed the middle person was to give a link in the chain of domestic violence back to the older person. And once she says there was no domestic violence, you don't have the link. So I don't understand how that helps. Well, we do still have the testimony. And that's what the trial court, I think, was pressing the prosecution to do. Because recall in the record, the prosecution was having trouble getting this inmate prisoner transported. And so the court was warning the prosecution, hey, if this person doesn't come and testify, that might be reason for me to revisit my ruling. But again, that was part of the rationale. But the inmate, Ms. Gullich, ultimately did testify. And she did provide key facts. She testified that there was a fire at the house that she lived in. She admitted she lived there. She admitted that the defendant and her had an argument right before this fire had started. We also heard testimony from the other evidence, particularly from Ms. Davidson, that often what happens in domestic violence cases is initially when it happens, the victim will not come forward. They will try and cover up for the perpetrator. They will recant. They'll deny. And so the trial court may have said – I'm sorry. Can I interrupt you? So say you lose on this. What is your argument about prejudice if we're starting on de novo review? Even on de novo review, it was not prejudicial. Although the state's case has some circumstantial evidence regarding particularly the fatal act, the evidence still, in tandem with each other, provided a compelling narrative of guilt. We have the witness testimony of what the defendant did before. Recall, as the court remarked earlier, there was unchallenged evidence regarding escalating violent incidents between the victim and Mr. Rivera. There was even evidence about something that had happened at knife point the day before the charge of murder. We have DNA evidence. Well, DNA doesn't mean much in this context when they were in an intimate relationship. It's one thing if they were strangers and you find DNA evidence, but they lived together. They were in intimate relationships. But DNA doesn't mean much here. Well, it's not just the mere fact that there was DNA. It's the location. Recall that the prosecution's theory is that this was death by strangulation. And so where they found the DNA was the point that the prosecution had emphasized at trial. The DNA was on the neck and the fingers and the hands. That would have been the places where, had there been a struggle during a strangulation by hand, that's where you would expect to see DNA. And that's ultimately where it was found. We also have data evidence from the medical examiner. I think my time is about to run out. But the medical examiner opined that it would have taken at least two to four minutes of sustained, substantial strangulation to kill the victim. That would make the accident almost impossible. I see I'm about to run out of time. I'm happy to answer any questions the court has. Apparently not. Thank you. Please affirm.  We have a couple minutes for rebuttal, Your Honor. First, to Your Honor's point, Judge Friedland, one thing that we have to keep in mind about whether this would have been meritorious and whether a reasonably confident defense attorney would have objected is also the legal standard here. 1109E says this is presumptively inadmissible because it is so old. And so the judge then has to do this interest of justice balancing the 403 analysis. So one school, it testifies that there's no abuse. As Your Honor pointed out, there's no link there. And so it goes back to being presumptively inadmissible unless the judge makes this finding. And there was no basis to make that finding. You're just saying that, though, right? Because the court ruled twice that it would allow the information in. And it talks about staleness. But staleness isn't part of the interest of justice analysis. There's nothing in the statute saying that that's the case. That's the way the statute is written, Your Honor, is it? Let me grab it. It says evidence of acts occurring more than 10 years before the charged offense is inadmissible under this section unless the court does the balancing. And so the court here balanced twice and said it was admissible. And it refers to Ms. Golich's testimony and says it's important in its thinking. But then Golich did testify. So I was a little confused about that. Well, I think what's important is what the judge explicitly said. And this ties into another point. He didn't just say that Golich had to take the stand and testify. The judge says at 4 ER 429 the reason I think it isn't so stale to be excluded is that there is similar conduct with a woman after Ms. Davidson and before Ms. Hickson. So I think the court's earlier ruling is correct. And then he explains later at 434 the reason it's not too stale is the fact that Ms. Golich was going to present an event in 2005. So she has to specifically testify that he abused her in 2005. That's the basis of the judge's 403 or 352 balancing. It's not just that she takes the stand and says anything. And in fact, she says it's the opposite. Correct. She denied any abuse during their relationship. I think I'm over my time, so thank you. Thank you. The case of Rivera v. Gates is submitted.
judges: IKUTA, FRIEDLAND, LEE